David N. Chandler, Sr.    SBN 60780
David N. Chandler, Jr.    SBN 235427
DAVID N. CHANDLER, p.c.
1747 Fourth Street
Santa Rosa, CA  95404
Telephone: (707) 528-4331

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE:                          CASE No. 16-10665

BARBARA JEAN BARRIELLE,          CHAPTER 11

_____Debtor._____/    DEBTOR'S DISCLOSURE STATEMENT


A. <u>INTRODUCTION</u>.

Barbara Jean Barrielle, hereafter referred to as the "Debtor", submits this Disclosure Statement to all of her known creditors and interest holders entitled to same pursuant to section 1125 of the United States Bankruptcy Code ll U.S.C. section 101, et seq. ("the Bankruptcy Code"). The purpose of this Disclosure Statement is to provide creditors of the Debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Debtor's Chapter ll Plan of Reorganization (the "Plan") described below. The Debtor's Chapter ll Plan of Reorganization has been filed with this Court.

NO REPRESENTATIONS CONCERNING THE DEBTOR (INCLUDING THE VALUE OF ASSETS, ANY PROPERTY AND CREDITORS CLAIMS) INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED. Except as otherwise

expressly stated, the portions of this Disclosure Statement describing the Debtor and the Plan have been prepared from information obtained from the Debtor.

Under the Plan, all Secured claims, to the extent allowed as secured claims pursuant to 11 U.S.C. Section 506, and to the extent the validity of the security interest is determined by the Court and not otherwise avoidable, will be paid. Unsecured claims shall be paid on a pro rata basis, quarterly, from a disbursing account which will be paid into monthly by the debtor, in the amount of $250.00 per month. The dividend to allowed general unsecured claims will be approximately 30% based upon Debtor's Schedule F, although it may be less depending the amount of allowed unsecured claims following determination(s) of secured status and whether any creditor makes the election contemplated in § 1111(b)(2) of the Code.

A Chapter 7 liquidation could take up to three years before distribution is made, if any, and additional administrative expenses would be incurred. Tax consequences of liquidation, expenses of sale, professional fees and trustee's fees are administrative expenses in a Chapter 7 liquidation and paid before pre-petition claims are paid. Administrative expenses of Chapter 11 are also paid prior to payment of pre-petition claims. The dividend proposed by the Plan exceeds that available in the event of liquidation.

B. <u>FILING OF REORGANIZATION CASE</u>.

On August 2, 2016, the Debtor filed her petition pursuant to Chapter 13 of the Bankruptcy Code. The case was converted to a case under Chapter 11 of the Code on January 30, 2017. Since that time the Debtor has remained in possession of her property as debtor in possession.

C. <u>MANNER OF VOTING</u>.

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and causing the Ballot Form accompanying this Disclosure Statement to be sent to the Debtor's counsel prior to the date set by the Court for the filing of such ballots.

D. <u>CONFIRMATION OF THE PLAN</u>.

1. <u>Solicitation of Acceptance</u>.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with section 1125 of the bankruptcy code and is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a Proof of Claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. The Disclosure Statement is intended to assist creditors and interest holders in evaluating the Plan and in determining whether to accept the Plan. Under the Bankruptcy Code, acceptance of the Plan may not be solicited unless a copy of this Disclosure Statement is received prior to or concurrently with such solicitation.

2. <u>Persons Entitled to Vote on Plan</u>.

Only the votes of Classes of claimants and interest holders which are impaired by the Plan are counted in connection with confirmation of the Plan. Generally and subject to the specific provisions of Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will receive less than payment in full of their creditor's claims.

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by

the Debtor, as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation, has filed with the court a Proof of Claim which has not been disallowed or suspended prior to computation of the votes on the Plan. The Ballot form which you receive does not constitute a Proof of Claim. If you are in any way uncertain whether or not your claim has been correctly scheduled, you should review the Debtor's schedules which are on file in the Bankruptcy Court. The Clerk of the Bankruptcy Court will not provide this information by telephone.

### 3. Hearing on Confirmation of the Plan.

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and interest holders and whether the other requirements of confirmation of the Plan are satisfied. Each creditor and interest holder will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

### 4. Acceptance Necessary to Confirm Plan.

At the scheduled hearing, the Bankruptcy Court must determine, amongst other things, whether the Plan has been accepted by each impaired Class. Under Section 1125 of the Bankruptcy Code, an impaired Class is deemed to have accepted the Plan if at least two thirds in amount and more than one-half in number of the allowed claims or interest of Class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired Class, the Bankruptcy Court must also determine that under the Plan Class members will receive property of a value, as of the effective

date of the Plan, that is not less than the amount that such Class members would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.

5. Confirmation of the Plan Without Necessary Acceptance.

The Plan may be confirmed even if it is not accepted by one or all of the impaired classes, if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such class or classes.

II

A. DESCRIPTION OF DEBTOR AND HISTORICAL BACKGROUND.

The Debtor was raised and went to college in Ohio. She later received an MBA at the University of Texas. Her concentration was in real estate finance. After many years in banking, she entered the field of public relations and worked for twenty-years in sports, consumer products and food and wine. The Debtor continues to work in public relations. She writes for several clients and is a freelance writer for several publications and online magazines. The Debtor started producing films about seven-years ago and her first feature will soon be released. Her work in making films is sporadic but it is fulfilling and can be profitable if done well.

1. The Healdsburg Property.

During her career in public relations in the wine industry, the Debtor and husband Sylvain Barrielle moved their family to Healdsburg, California, where they eventually bought a home at 223 Zinfandel Rd., Healdsburg, California 95448 (the "Healdsburg Property") in 2002. The Healdsburg Property consists of a main residence, a separate 800 square-foot guesthouse and a studio

apartment. The Debtor and her family lived at the Healdsburg Property for approximately six-years. In 2008, after separating from her husband, the Debtor moved to Los Angeles to help with her daughter's education and to work a job in public relations. The Debtor rented the main home at the Healdsburg Property as a long term rental and kept the two additional units (i.e., the guesthouse/cottage and studio) as vacation rentals.

The Debtor moved back to Healdsburg from the Los Angeles area in September, 2016, after the bankruptcy was filed. She moved back into the main house at the Healdsburg Property. The guesthouse is currently rented long term and the studio, after some repairs, will soon be rented as well. The Healdsburg Property is vital to the Debtor as it produces substantial income and it is her home. The Debtor has a license to operate the Healdsburg Property as a bed & breakfast and she has in the past offered both short and long term rentals. She currently offers the cottage as a long term month-to-month rental under written lease agreement for $1,950 per month. The studio is not rented but the Debtor expects to rent it for approximately $1,000-$1,250 per month when repairs are completed.

The Healdsburg Property is encumbered by a tax lien for approximately $8,300 owed to the Sonoma County Tax Collector for property taxes. The Healdsburg Property is also encumbered by a first Deed of Trust held by HSBC Bank USA, N.A. as Trustee for Deutsche Alt-A Securities Mortgage Trust, Series 2007-OA5, which secures an obligation of $1,847,245.39 as reflected in Proof of Claim No. 10 filed with the Court. The Healdsburg Property is also encumbered by a second Deed of Trust held by Etrade Bank which

secures an obligation of $77,725.08 as reflected in Proof of Claim No. 2. The Healdsburg Property is insured. The Debtor obtained an appraisal and believes the value of the Healdsburg Property as of June 20, 2017 is $1,089,000.

       2. The Hawaii Property.

     During a vacation to Hawaii, the Debtor found a well used unit needing repairs in the Kahala Beach in Oahu. It was well-priced and negotiations indicated that the underlying lease with King Kamehameha Schools would be renewed and value would appreciate, particularly after the property was renovated. The Debtor purchased 4999 Kahala Beach #370, Honolulu, HI 96816 (the "Hawaii Property") in or about 2005. Unfortunately, the underlying lease has not been renewed and it is set to expire in approximately 10-years. The Debtor rented the Hawaii Property as a vacation rental but management proved difficult. The Hawaii Property is now rented as a long term rental. Because of the uncertainty involved with the lease not being renewed and ongoing lease-related litigation, the value of the Hawaii Property dropped significantly. Notwithstanding its good condition, the unit would be difficult to sell now at any price. Similar units are currently priced at $120,000-150,000.

     The Hawaii Property is encumbered by a first Deed of Trust held by US Bank, N.A./Ocwen Loan Servicing/BNC Mortgage, Inc. which secures an obligation of approximately $650,000. The Hawaii Property is also encumbered by a lien for delinquent HOA assessments owed to AOAO Kahala Beach Mgt. Co., in the amount of $10,051.56 as reflected in Proof of Claim No. 1 filed with the Court. The Hawaii Property is insured. The Debtor obtained an appraisal and believes the value of

the Hawaii Property as of June 25, 2017 is $155,000.

        3. <u>Unsecured claims</u>.

The Debtor's Schedule F filed in the case reflects non-priority general unsecured debts of approximately $50,000. The Debtor's Schedule E reflects $0 owing on priority claims. As reflected in Proof of Claim No. 9, the Franchise Tax Board (the "FTB") initially filed a claim for $4,207.09, of which $3,365.67 was characterized as priority. However, the FTB filed and Amended Proof of Claim No. 9 which shows nothing owing by the Debtor. The claim indicates that liability for 2015 has not yet been determined. As reflected in Proof of Claim No. 13, the Internal Revenue Service filed a priority claim for $3,133 relating to 2015, although the claim indicates that there is an examination of that assessment.

        4. <u>State Court Litigation</u>.

In October, 2006, the Debtor and her Husband refinanced the Healdsburg Property and obtained a new loan in the amount of $1,200,000. In exchange, the Lender, DB Home Lending, LLC, was given a Note and Deed of Trust. Unbeknownst to the Debtor and her Husband, the legal description for the wrong property was attached to the Deed of Trust. In or about 2009, DB Home Lending, LLC assigned its rights under the Note and Deed of Trust to GMAC Mortgage Corp. ("GMAC"). Although the Assignment of Deed of Trust was not executed or recorded until 2012 when Mortgage Electronic Registration Systems, Inc. ("MERS") ostensibly did so as nominee for DB Home Lending, LLC.

In 2009, before MERS assigned rights to GMAC, there was a default on the loan and GMAC attempted to foreclose the Deed of

Trust. However, after realizing that there was a defect in its security instrument, GMAC stopped its efforts to foreclose and filed suit against the Debtor and her Husband in Sonoma County Superior Court to quiet title and reform the defective Deed of Trust.

During the lawsuit, the Debtor and her Husband applied for a loan modification with GMAC which was ultimately approved. GMAC dismissed the action in January, 2011 as the Parties agreed to correct the Deed of Trust. GMAC asserted that the Debtor and her Husband failed to comply with the terms of the loan modification. However, from the Debtor's standpoint, the loan modification approval process abruptly ended without explanation from GMAC while the Debtor was prepared to move forward.

The Debtor tried for two years to re-institute the loan modification. Facing a possible trustee's sale after GMAC renewed its efforts to foreclose the Deed of Trust, the Debtor filed a Chapter 13 bankruptcy case in February, 2011. The bankruptcy stayed the foreclosure, but the case was later dismissed. The Debtor continued with her efforts to re-institute the loan modification. In March, 2013, GMAC again sued the Debtor and her Husband in Sonoma County Superior Court to quiet title and reform the Deed of Trust or, in the alternative, to impose an equitable lien on the Healdsburg Property. In or about July, 2013, GMAC assigned its rights under the Note and Deed of Trust to HSBC Bank USA, N.A. as Trustee for Deutsche Alt-A Securities Mortgage Trust, Series 2007-OA5 ("HSBC").

HSBC and the Debtor litigated for over three years. Throughout the case, the Debtor remained willing to amicably resolve the Deed

of Trust issue and re-institute the loan modification. Unfortunately, HSBC was unwilling to resolve the matter amicably so the matter was litigated instead. The Superior Court issued terminating sanctions against the Debtor based on non-compliance with discovery orders. The Debtor's Answer to Complaint was stricken and a default was entered against her. Trial commenced on July 29, 2011 on HSBC's claims against the Debtor's Husband who asserts, amongst other things, that HSBC's claim is barred by the applicable statute of limitations.

The Debtor commenced her second Chapter 13 case on August 2, 2016, after trial commenced in *HSBC v. Barrielle, et al.*, Case No. SCV-25343. The Chapter 13 case was converted to a case under Chapter 11 of the Code on January 30, 2017.

On February 27, 2017, HSBC filed its Motion for Relief From the Automatic Stay or Alternatively Order Re: Abstention (the "Motion for Relief From Stay"). A hearing was held on the Motion for Relief From Stay on March 23, 2017. On April 3, 2017, the Order Granting in Part Motion for Relief From the Automatic Stay was entered which lifted the Automatic Stay provisions of Section 362 of the Bankruptcy Code to permit HSBC to proceed to judgment on the limited issue of reformation of the Deed of Trust due to mistake.

When this bankruptcy case was commenced, the Debtor's Husband had a pending Motion for Judgment on the Pleadings based on his statute of limitations defense. On or about May 23, 2017, after the Bankruptcy Court granted, in part, HSBC's Motion and lifted the Automatic Stay, the Superior Court issued a tentative ruling granting the Motion for Judgment on the Pleadings based on

expiration of the applicable limitations period. HSBC did not accept the tentative ruling and a hearing was held on May 25, 2017. Following the hearing, the Court adopted the tentative ruling with several changes, including a determination that the ruling only applies to the Debtor's Husband and giving HSBC 20-days to file an amended complaint.

On or about June 15, 2017, HSBC filed its Second Amended Complaint. The Debtor's Husband Sylvain demurred to the Second Amended Complaint in late-August. Ultimately, HSBC's Second Amended Complaint will be adjudicated, at least with respect to the claim for reformation based on mistake. It is unclear how long it will take for resolution of the action, and the outcome and implications to the estate remain uncertain.

The Bankruptcy Court retains jurisdiction to determine issues relating to the validity and extent of HSBC's lien which might be challenged under Section 544 of the Bankruptcy Code. Notably, Section 544 of the Code would permit a trustee or Chapter 11 debtor-in-possession to avoid transfers if a hypothetical bona fide purchaser could receive title to the Healdsburg Property free and clear of HSBC's lien as a result of there being no constructive notice imparted from recordation of the defective Deed of Trust. If the lien were avoided, it would be preserved for the benefit of the estate under Section 551 of the Bankruptcy Code which would enhance distribution on unsecured claims. It is anticipated that HSBC would oppose avoidance.

5. <u>Chapter 11 Plan of Reorganization</u>.

The Debtor intends to maintain ownership of the Healdsburg

Property and the Hawaii Property. Unsecured claims must be paid an amount at least equal to what would be paid in a hypothetical Chapter 7 liquidation. The Debtor proposes to pay general unsecured creditors the aggregate sum of $15,000 in installments from post confirmation income.

The alternative, liquidation in Chapter 7, would likely net nothing to unsecured creditors as set forth in the Liquidation Analysis attached hereto as Exhibit A. There is no equity in the Healdsburg Property or the Hawaii Property. The Debtor's personal property is fully exempt, save and except for $1,425 in a life insurance policy which would likely be exhausted from expenses of administration. There would probably be nothing available in a Chapter 7 liquidation for distribution to general unsecured creditors unless a Chapter 7 trustee avoided HSBC's Deed of Trust under Section 544.

The Plan will pay secured claims, as determined under Section 506 of the Code. With respect to HSBC's 1st Deed of Trust encumbering the Healdsburg Property and the 1st Deed of Trust of US Bank, N.A./Ocwen Loan Servicing/BNC Mortgage, Inc. encumbering the Hawaii Property, the Plan proposes monthly interest-only payments at a Market Rate of Interest (i.e., 3.5% per annum or such other rate of interest as the Court determines at confirmation). All other classes of allowed secured claims will be paid in monthly payments of principal and interest at a Market Rate of Interest based on a full 30-year amortization from the effective date of the Plan.

If a Class of allowed secured claims makes the election contemplated in § 1111(b)(2) of the Code, § 506(d) will not operate

to void any unsecured portion of the subject lien. Any electing creditor(s) will become entitled to a stream of payments at least equal to their total Allowed Claim(s). The term of repayment may be extended as necessary to pay the Class such amount based on the monthly payment required under the Plan. Any electing creditor(s) will forfeit any right to an unsecured deficiency claim and the right to cast a ballot on account of any unsecured claim.

The Debtor intends to fund the Chapter 11 Plan with post-confirmation income derived from rents and her work in public relations, writing and film making. She projects income of approximately $10,550-11,800 per month.

B. <u>FEASIBILITY OF PLAN</u>.

One of the requirements to confirm a Chapter 11 Plan under Section 1129 of the Code is that confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, unless liquidation or reorganization is proposed in the plan. In other words, a debtor must demonstrate the feasibility of a proposed Chapter 11 plan. To demonstrate that a plan is feasible, a debtor need only show a reasonable probability of success. The Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy the feasibility requirement, so long as adequate evidence supports a finding of feasibility.

In the context of this Chapter 11 proceeding, the requirement of feasibility means that the Debtor must show with adequate evidence that she has a reasonable probability of success in servicing claims treated under the Plan. The Debtor believes that

the proposed Chapter 11 Plan is feasible.

The Debtor estimates that the Plan will require total monthly payments of $4,333.05. Such sum includes monthly estimates for secured real property tax claims (approx. 210.80), priority tax claims (approx. $0), service of the secured claims of HSBC and US Bank, N.A./Ocwen Loan Servicing/BNC Mortgage, Inc. (approx. $3,872.25 in the aggregate) and unsecured claims (approx. $250). The foregoing does not include any allowed expenses of Chapter 11 administration which are currently estimated at $10,000-15,000 after application of the retainer paid to Counsel by the Debtor.

The Debtor's employment and rental income will be sufficient to enable her to service the claims treated under the Plan as well as pay for other reasonable living expenses.

III

A. PLAN OF REORGANIZATION.

The following is a brief summary of the Plan, and is qualified in its entirety by the full text of the Plan itself. The Plan, if confirmed, will be binding upon the Debtor, her creditors and interest holders. All creditors and interest holders are urged to read the Plan carefully.

The Plan divides claims and interests into 9 classes. The classes consist of the following:

1. Class 1 Claims. Allowed claims entitled to priority pursuant to Section 507 of the Code.

2. Class 2 Claims. Allowed secured claim of the County of Sonoma based upon the secured tax roll and secured by real property located at 223 Zinfandel Rd., Healdsburg, California 95448.

3.   <u>Class 3 Claims.</u>   Allowed secured claim of HSBC Bank USA, N.A. as Trustee for Deutsche Alt-A Securities Mortgage Trust, Series 2007-OA5 secured by a Deed of Trust on real property located at 223 Zinfandel Rd., Healdsburg, California 95448.

4.   <u>Class 4 Claims.</u>   Allowed secured claim of Etrade Bank secured by a Deed of Trust on real property located at 223 Zinfandel Rd., Healdsburg, California 95448.

5.   <u>Class 5 Claims.</u>   Allowed secured claim of the County of Honolulu based upon the secured tax roll and secured by real property located at 4999 Kahala Beach #370, Honolulu, HI 96816.

6.   <u>Class 6 Claims.</u>   Allowed secured claim of US Bank, N.A./Ocwen Loan Servicing/BNC Mortgage, Inc. secured by a Deed of Trust on real property located at 4999 Kahala Beach #370, Honolulu, HI 96816.

7.   <u>Class 7 Claims.</u>   Allowed secured claim of the Association of Apartment Owners of the Kahala Beach secured by a statutory lien on real property located at 4999 Kahala Beach #370, Honolulu, HI 96816.

8.   <u>Class 8 Claims.</u>   Allowed claims of creditors, other than those holding allowed Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, Class 5 Claims, Class 6 Claims, Class 7 Claims and Class 9 Interests including, but not limited to, creditors whose claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Court finds the same unsecured in whole or in part.

9.   <u>Class 9 Interests</u>.   Allowed interests of Debtor.

The Plan treats the classes as follows:

1.  **Class 1 Claims are impaired.** Holders of allowed Class 1 Claims shall be paid in equal monthly installments of principal and interest or more at the statutory rate beginning on the effective date and continuing for a period ending at 5-years after the date of the Order for Relief.

2.  **Class 2 Claims are impaired.** Holders of allowed Class 2 Claims which are not current on the effective date of the Plan shall be placed on a five-year plan as provided by statute for real property located at 223 Zinfandel Rd., Healdsburg, California 95448.

Such Holders shall retain the lien in the collateral.

3.  **Class 3 Claims are impaired.** Holders of allowed Class 3 Claims shall be paid an amount equal to such holder's interest in the estate's interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in interest-only monthly installments at a Market Rate of Interest, balance due at 15-years from the Effective Date of the Plan.

Such Holders shall retain the lien in the collateral to the extent of the allowed secured claim.

4.  **Class 4 Claims are impaired.** Holders of allowed Class 4 Claims shall be paid an amount equal to such holder's interest in the estate's interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in monthly installments of principal and interest at a Market Rate of Interest based upon a thirty year amortization.

Such Holders shall retain the lien in the collateral to the extent of the allowed secured claim.

5. <u>Class 5 Claims are impaired.</u>  Holders of allowed Class 5 Claims which are not current on the effective date of the Plan shall be paid in 60 equal monthly installments of delinquent tax and penalty, together with interest at the statutory rate, for real property located at 4999 Kahala Beach #370, Honolulu, HI 96816.

Such Holders shall retain the lien in the collateral.

6. <u>Class 6 Claims are impaired.</u>  Holders of allowed Class 6 Claims shall be paid an amount equal to such holder's interest in the estate's interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in interest-only monthly installments at a Market Rate of Interest, balance due at 15-years from the Effective Date of the Plan.

Such Holders shall retain the lien in the collateral to the extent of the allowed secured claim.

7. <u>Class 7 Claims are impaired.</u>  Holders of allowed Class 7 Claims shall be paid an amount equal to such holder's interest in the estate's interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in monthly installments of principal and interest at a Market Rate of Interest based upon a thirty year amortization.

Such Holders shall retain the lien in the collateral to the extent of the allowed secured claim.

8. <u>Class 8 Claims are impaired.</u>  Holders of Class 8 Claims shall be paid the aggregate amount of $15,000 in 60 equal monthly installments which shall be distributed to such holders on a pro-rata basis each quarter.

9. <u>Class 9 Interests are impaired.</u>  Holders of allowed Class

9 Interests shall retain exempt property and all rights to exemption. Such holders shall retain their rights pursuant to 11 U.S.C. Sections 544, et seq. and 522(f) to avoid liens and transfers. The property of the estate shall re-vest in the Debtor on the effective date of the Plan subject to the terms of the Plan.

10. Election claim(s) under 11 U.S.C. § 1111(b)(2). In the event that any Class of claims makes the election contemplated in Section 1111(b)(2) of the Code, in addition to the particular treatment provided for such Class, supra, the treatment afforded electing claims shall be as follows:

Creditors holding election claims shall retain their liens to the extent of their total Allowed Claim without application of 11 U.S.C. § 506(d). The payments contemplated in the relevant treatment section for an electing class, supra, shall continue beyond the term set forth therein as is necessary to pay the electing creditor(s) a sum equal to such creditor(s) total Allowed Claim(s). If the sum of payments contemplated in the relevant treatment section for the electing class, supra, equals or exceeds the electing creditor(s) total Allowed Claim(s), the duration of payments shall not be extended beyond the term set forth therein. Should the collateral be sold or refinanced, any unpaid portion of the lien shall be then due and payable.

The Plan provides for the following means of performance:

1. The Debtor will continue to generate income from working in the public relations and film production industries in order to fund the within Plan.

2. The Debtor may cause real property located at 223

Zinfandel Rd., Healdsburg, California 95448 to be leased, sold or refinanced. If a sale or refinance is effectuated, holders of allowed claims secured by such property shall be paid from the proceeds of sale or refinance together with interest as herein provided.

3. The Debtor may cause real property located at 4999 Kahala Beach #370, Honolulu, HI 96816 to be leased, sold or refinanced. If a sale or refinance is effectuated, holders of allowed claims secured by such property shall be paid from the proceeds of sale or refinance together with interest as herein provided. In the event that the leasehold interest relating to such property is not renewed by the Lessor at the end of the lease term, The Debtor may surrender the real property to holders of allowed claims secured by such property in full satisfaction of their secured claims.

4. The Debtor shall commence payments to holders of allowed secured claims on the effective date of the Plan as herein set forth. Motions or Adversary Proceedings will be commenced within 90 days of the effective date to determine such secured amounts pursuant to Section 506 where such determination is relevant to the implementation of the Plan terms.

5. Taxes on the secured tax roll which are not current on the effective date shall be placed on a five year Plan pursuant to Statute.

6. No party shall take any action against the Debtor, her assets, or assets of the estate inconsistent with the terms of the within Plan.

7. The Debtor shall commence payments to the unsecured

creditors on the effective date of the Plan at the monthly rate as provided herein. The pro-rata distributions may be made from a disbursing account on a quarterly basis.

8. The Debtor shall comply with post confirmation reporting requirements to the U.S. Trustee and payment of U.S. Trustee fees post confirmation until entry of Final Order as required by law. Nothing contained in the Plan shall impose or expand the requirements for reporting and payment of fees as set forth by statute and/or case law. In the event the case is converted to a case under Chapter 7, the assets shall re-vest in the Chapter 7 estate.

9. Any sale or refinance of property as provided herein may be made free and clear of liens as provided in the Code. The Court shall specifically reserve jurisdiction to implement the Plan, to approve sale of property, and to direct such sale of property free and clear of lien where necessary or appropriate.

10. The Debtor reserves rights to object to any claim filed in the case and to assert any and all counterclaims against any party filing such a claim.

11. Should Debtor default on her obligations to pay secured creditors pursuant to the herein Plan, such creditors may exercise non-judicial remedies pursuant to State Law after fifteen (15) days written notice is given by first class mail postage prepaid. Such a default shall not constitute a material default under the Plan.

12. Confirmation of the herein Plan shall operate as a cure of any and all pre-confirmation defaults.

13. The Debtor reserves rights to object to the reasonableness

of any attorneys fees and charges claimed by any secured creditor and to object to any claim of any creditor for which such creditor requests allowance.

14. The Debtor reserves rights to seek sanctions against any party to this proceeding or such party's attorney for violating Rule 9011 of the Federal Rules of Bankruptcy Procedure.

15. The Debtor reserves rights to seek avoidance of any transfer of property to any person under Section 544 of the Code, including but not limited to Holders of Class 3 Claims whose lien is evidenced by a defective Deed of Trust. Avoided transfers shall be preserved for the estate as provided in the Code and any distributions provided herein on account of such transfers shall inure to the benefit of Holders of Class 8 Claims after payment of allowed administrative and priority claims.

The Bankruptcy Court will retain jurisdiction under the Plan for the following purposes:

1. Determination of the allowance of claims upon objection to such claims by the Debtor based upon any provision of law, including, but not limited to any right of set off, counterclaims, statute of limitations, and any and all defenses thereto;

2. Determination of the validity, priority and extent of liens under any applicable provision of law, including, but not limited to Rules of Professional Conduct;

3. Determination of requests for payment of claims entitled to priority under Bankruptcy Code Section 507(a)(1), including compensation of parties entitled thereto;

4. Determination of any counter claims against any party

filing a claim in the case, and determination of any sanctions against any party to the case or such party's attorney for violating Rule 9011 of the Federal Rules of Bankruptcy Procedure.

5.   Resolution of any disputes regarding the interpretation of the Plan;

6.   Implementation of the provisions of the Plan and entry of Orders in aid of confirmation of the Plan, including without limitation, appropriate orders to protect the Debtor from creditor actions, approval of sale of property, orders for sale free and clear of liens and interests;

7.   Modification of the Plan pursuant to Section 1127 of Title 11;

8.   Determination of reasonableness of any attorneys fees and charges claimed by any creditor or lessor;

9.   Avoidances of avoidable transfers pursuant to the Bankruptcy Code and recovery of improper post-petition transfers, and any reserved cause of action;

10.   Determination of secured status, extent of secured status, and Debtor's right to recover expenses from property securing claim pursuant to Section 506 of the Bankruptcy Code;

11.   Enforcement of all stipulations entered into by the Debtor in possession and Orders and Judgments made by the Court;

12.   Collection of any sums due the Debtor from other parties or from any other source;

13.   Determination of rights and causes of action reserved to the Debtor as provided herein; and

14.   Entry of final decree.

The assets and liabilities of the Debtors are set forth in the Debtor's Schedules, on file with the Court. The Proponent believes that the terms of the Plan are feasible, and that she will be able to perform under the Plan.

Dated: 8/25/17                    DAVID N. CHANDLER, p.c.

                                  By: /s/ David N. Chandler, Jr.
                                  DAVID N. CHANDLER, JR.
                                  Attorney for Debtor

| Property | Value | Secured Debt | Exempt | Non-Exempt Equity |
|---|---|---|---|---|
| | | | | |
| 223 Zinfandel Rd., Healdsburg CA 95448 | $1,089,000 | $1,933,270.47 | $ – | $ – |
| 4999 Kahala Beach #370, Honolulu, HI 96816 | $ 155,000.00 | $ 660,051.56 | $ – | $ – |
| 2007 Volvo XC90, 150,000 miles | $ 10,000.00 | $ – | $10,000 | $ – |
| 1995 BMW 280i, 120,000 miles | $ 5,000.00 | $ – | $ 5,000.00 | $ – |
| Appliances and furnishings | $ 25,000.00 | $ – | $25,000.00 | $ – |
| Computers, Television | $ 5,000.00 | $ – | $ 5,000.00 | $ – |
| Surf board, bikes | $ 700.00 | $ – | $ 700.00 | $ – |
| Clothing | $ 2,000.00 | $ – | $ 2,000.00 | $ – |
| Jewelry, rings | $ 4,000.00 | $ – | $ 4,000.00 | $ – |
| Dogs (2) | $ – | $ – | $ – | $ – |
| Cash | $ 200.00 | $ – | $ 200.00 | $ – |
| American River Bank DIP account xxx0350 | $ 1,763.53 | $ – | $ 1,763.53 | $ – |
| American River Bank DIP account xxx0305 | $ 30.00 | $ – | $ 30.00 | $ – |
| Scottrade Bank investment account | $ 10,000.00 | $ – | $10,000.00 | $ – |
| Voya Financial 401(k) | $ 17,500.00 | $ – | $17,500.00 | $ – |
| Union Central Whole Life Insurance Policy | $ 5,000.00 | $ – | $ 3,575.00 | $ 1,425.00 |
| | | | TOTAL: | $ 1,425.00 |
| Expenses of Administration: | | | | |
| Chapter 11 Attorneys Fees | | | | ($10,000) |
| Chatper 7 Trustee Fees | | | | ($142.50) |
| **NET AVAILABLE FOR DISTRIBUTION TO GENERAL UNSECURED CREDITORS:** | | | | $0.00 |
| | | | | |